# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID DINO TUBB, JR.,**<br>**Plaintiff,**<br>**v.**<br><br>**CAROLYN W. COLVIN, Acting**<br>**Commissioner of Social Security,**<br>**Defendant.**<br>_____ | ) NO. EDCV 15-1680-KS<br>)<br>)<br>) **MEMORANDUM OPINION AND ORDER**<br>)<br>)<br>)<br>)<br>) |

## INTRODUCTION

Plaintiff filed a Complaint on August 20, 2015, seeking review of the denial of his application for disability insurance ("DIB") and Supplemental Security Income ("SSI") benefits.  On January 26, 2016, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order vacating the Commissioner's decision and remanding the matter for further administrative proceedings.  (Joint Stip. at 22.)  The Commissioner requests that the ALJ's decision be affirmed.  (*Id.* at 22.)  On September 10, 2015 and February 12, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  (Dkt. Nos. 9, 18.)  The Court has taken the matter under submission without oral argument.

1

1
2

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

3
4       On May 22, 2012 and May 31, 2012, respectively, plaintiff, who was born on February
5   6, 1978,[1] applied for a period of disability, DIB, and SSI.  (Administrative Record ("A.R.")
6   90-101, 447-452.)  Plaintiff had filed a prior application for a period of disability and DIB,
7   which was denied at the initial level on March 3, 2006.  (*Id.* 33.)  In connection with his
8   2012 applications, plaintiff alleged disability commencing November 30, 2009, due to
9   PTSD, learning problems, dyslexia, and problems with his back, neck, left index finger, right
10  knee, and left arm.  (*Id.* 155, 183-190.)  Plaintiff's prior relevant work experience included
11  employment as a janitor, fast food cook, construction worker II, short order cook, and
12  telephone solicitor.  (*Id.* 28, 192.)  The Commissioner denied plaintiff's applications initially
13  (*id.* 32-43, 453-464) and on reconsideration (*id.* 44, 465).  On July 5, 2013, plaintiff
14  requested a hearing.[2]  (*Id.* 63.)  On March 27, 2014, plaintiff, who was represented by
15  counsel, testified before Administrative Law Judge Mason Harrell, Jr. ("ALJ").  (*Id.* 501-
16  523.)  Sandra Fioretti, a vocational expert ("VE"), also testified.  (*Id.* 524-530.)  On October
17  22, 2014, the ALJ issued an unfavorable decision, denying plaintiff's claims for DIB and
18  SSI.  (*Id.* 18-30.)  On June 24, 2015, the Appeals Council denied plaintiff's request for
    review.  (*Id.* 6-10.)

19
20

## SUMMARY OF ADMINISTRATIVE DECISION

21
22      The ALJ found that plaintiff met the insured status requirements of the Social Security
23  Act through March 30, 2014 and had not engaged in substantial gainful activity from the
24  alleged onset date of November 30, 2009.  (A.R. 20.)  The ALJ further found that plaintiff

25

26  [1]      Plaintiff was 31 years old on the alleged disability onset date and thus a "younger person" as that term is defined by the Commissioner.  20 C.F.R. §§ 404.1563(c), 416.963(c).

27  [2]      Plaintiff previously requested a hearing on October 2, 2012, but the request was dismissed because a reconsideration determination had not been made.  (A.R. 48, 52.)  The Appeals Council reviewed the dismissal and denied plaintiff's request for review.  (*Id.* 55-57.)

28

had the following severe impairments: "status post multiple stab wounds, including in the left deltoid and right trapezius; deformity of left index finger; musculoligamentous strain of the cervical, thoracic and lumbar spine; borderline intellectual functioning; post-traumatic stress disorder (PTSD); affective disorder; cannabis abuse; and a depressive disorder, not otherwise specified."   (*Id.*)  The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* 21.)

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following limitations:

> [Plaintiff] has a GED education and his mathematic skills are limited to addition and subtraction.  Due to the deformity of the left index finger, [plaintiff] cannot use his left index finger to grab things.  Additional limitations include no extreme turning of the head to right; no work on heights, ropes, ladders, or scaffolds.  [Plaintiff] cannot stand for over 45 minutes at one time. [Plaintiff] can stand for 2 hours out of an 8-hour period and sit for 6 hours out of an 8-hour period.  After sitting for 60 minutes, [plaintiff] needs to stand and stretch for 1 minute.  [Plaintiff] can lift and carry 10 pounds frequently and 10 pounds occasionally.   [Plaintiff] requires the use of his cane to ambulate. [Plaintiff] may be off task up to 5% of the day and cannot complete complex or detailed tasks.   [Plaintiff] is also limited to only superficial and occasional contact with the public, coworkers, and supervisors.  [Plaintiff] may miss work once a month.

3

(*Id.* 23.)  The ALJ found that plaintiff was unable to perform any past relevant work, but in light of the VE's testimony and plaintiff's age, education, work experience, and RFC, he was able to perform work that exists in significant numbers in the national economy, such as the jobs of assembler, small products (DOT 734.687-018), and final assembler (DOT 713.687-018).  (*Id.* 28-29.)  The ALJ, therefore, found that plaintiff was not disabled.  (*Id.* 30.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following two errors:  (1) the ALJ improperly evaluated the opinions of plaintiff's treating physician, Dr. Eugene Ho, and examining physician, Dr. Ralph Steiger (Joint Stip. at 5-13); and (2) the ALJ improperly evaluated plaintiff's subjective symptom testimony (*id.* at 18-20).

## I.    The ALJ Properly Evaluated The Medical Opinions Of Treating Physician Dr. Ho And Examining Physician Dr. Steiger.

Plaintiff contends that the ALJ improperly evaluated the opinions of treating physician Dr. Ho and examining physician Dr. Steiger.

In Social Security cases, courts give different degrees of deference to medical opinions depending on whether the opinion is that of a "treating physician," "examining physician," or "nonexamining physician."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted).  Generally, a treating physician's opinion is given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the Plaintiff's] case record[.]"  *Orn*, 495 F.3d at 631 (citations and quotation marks

omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An examining physician's opinion is entitled to less weight than that of a treating physician, but more weight than a nonexamining physician's opinion. *Id.* (citation omitted).

The ALJ is required to articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison*, 759 F.3d at 1012. When the ALJ rejects a treating or examining physician's opinion that is not contradicted by another medical opinion, the ALJ is required to articulate "clear and convincing" reasons supported by substantial evidence in the record for discounting it. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted by another medical opinion, the ALJ is required to articulate "specific and legitimate" reasons supported by substantial evidence for discounting it. *Garrison*, 759 F.3d at 1012. Thus, an ALJ errs when he or she discounts a medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### A. The ALJ Properly Discounted The Opinion Of Dr. Ho.

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Ho, a treating physician. (Joint Stip. at 5-7, 9-11.) Dr. Ho first treated plaintiff on March 28, 2013 for complaints of hemorrhoids, chronic lower back pain, chronic left shoulder pain, and right knee instability and popping. (A.R. 372, 445.) Dr. Ho assessed bleeding internal hemorrhoids, chronic low back pain, and shoulder joint pain, and advised physical therapy, exercise, and medication for the chronic back pain, and ordered MRI scans of the left shoulder and right knee. (*Id.* 373.) In May 2013, Dr. Ho diagnosed possible PTSD and prescribed Celexa, which reduced plaintiff's anxiety and stress. (*Id.* 354, 363.) Dr. Ho's

examinations revealed minimal findings, such as "NAD" [no apparent distress], "ambulatory with cane," "obese," "Pt is able to demonstrate 'popping' noise of R knee with joint extension," and "R knee feels more lax vs L knee (ant drawer), no swelling or effusion." (*Id.* 354, 357, 360.) On the whole, Dr. Ho's treatment records document plaintiff's complaints of chronic back, shoulder and knee pain and anxiety, and show that the pain and anxiety were managed by medication and physical therapy. (*Id.* 351, 354, 360, 363, 367, 370, 373, 418.)

On July 17, 2014, Dr. Ho completed a Licensed Physicians [sic] Statement in connection with a Medical Information Verification Report for the San Bernardino Department of Child Support Services. (A.R. 445.) The purpose of the physician's statement was to verify that plaintiff was either temporarily or permanently totally disabled, and to determine plaintiff's child support potential. (*Id.*) Dr. Ho checked the box indicating that plaintiff was totally and permanently disabled. (*Id.*) Regarding the onset date, Dr. Ho stated: "My first contact with patient is 3/28/13, per patient unable to work since 2009." (*Id.*) Dr. Ho listed the diagnosis and prognosis as the following: "Chronic low back pain with degenerative change of spine, shoulder pain due to trauma (since 2012), contracture of left index finger, knee pain, history of car accident and stabbing with multiple injuries." (*Id.*) Dr. Ho described the treatment plan as "[h]istory of physical therapy, [m]edications for pain, and OMT (similar to chiropractic)." (*Id.* 446.) He stated that his last examination of plaintiff was on June 23, 2014. (*Id.*) He stated that plaintiff's return-to-work date was "unknown," but that it was "possibly/likely" that plaintiff "cannot return to work." (*Id.*)

The ALJ rejected Dr. Ho's opinion that plaintiff was totally and permanently disabled due to chronic back pain, shoulder pain, contracture of the left index finger, and knee pain, explaining that "Dr. Ho did not provide an explanation for this assessment or any specific functional limitations that prevented the [plaintiff] from working." (A.R. 27.) The ALJ also noted that Dr. Ho "primarily summarized [plaintiff's] subjective complaints and diagnoses,

but he did not provide clinical or diagnostic findings to support the functional assessment." (*Id.*)

Plaintiff concedes that Dr. Ho did not provide "any specific assessments of [plaintiff's] functional limitations," but argues that Dr. Ho did specify the diagnostic bases of his opinion, and the lack of specificity of his opinion does not provide a reason to discredit it. (Joint Stip. at 10.) An ALJ may "permissibly reject[ ] . . . checkoff reports that [do] not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111. Although Dr. Ho listed plaintiff's diagnoses in the physician's statement, he did not provide clinical findings to support those diagnoses. Furthermore, Dr. Ho's treatment notes in the record do not support his opinion that plaintiff was totally and permanently disabled because they reflect minimal objective findings (as plaintiff concedes) and indicated that medication and physical therapy controlled plaintiff's pain well and without side effects. (A.R. 348, 354, 360, 363, 367, 370, 418.) *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (treating physician's opinion that was "unsupported by rationale or treatment notes, and offered no objective medical findings" to support diagnoses was properly rejected).

The ALJ's also explained that he rejected Dr. Ho's July 17, 2014 opinion because Dr. Ho "primarily summarized plaintiff's subjective complaints." (A.R. 27.) Indeed, Dr. Ho based the onset date on plaintiff's representation that he was unable to work since 2009, without any further objective medical notations or specific clinical findings. (*Id.* 445 (stating "per patient unable to work since 2009").) Given Dr. Ho's generally mild examination findings (*id.* 354, 357, 360, 363), his opinion that plaintiff was totally and permanently disabled appear to have been based primarily on plaintiff's properly discredited subjective complaints.[3] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may

---

[3] Interestingly, a year before Dr. Ho filled out the physician's statement, a treatment note indicates that plaintiff "feels that he cannot work," and "[h]e would like form completed for dept of child support so that he won't be 'put in jail.'" (*Id.* 357) (errors in original).

8

reject treating physician's opinion if it is based "on a claimant's self-reports that have been properly discounted as incredible"); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ properly rejected treating physician's opinion because it was premised on claimant's subjective complaints).  Accordingly, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Ho's opinion.[4]

## B. The ALJ Properly Discounted The Opinion Of Dr. Steiger.

### 1.  Dr. Steiger's Medical Findings

Plaintiff next contends that the ALJ erred in discounting the opinion of Dr. Steiger, an examining orthopedic surgeon.  The record contains three documents from Dr. Steiger.

First, on April 15, 2014, on referral from his attorneys, plaintiff underwent an orthopedic evaluation by Dr. Steiger.  (A.R. 25, 428-442.)  At that evaluation, plaintiff reported that he was stabbed approximately three years ago, and he last worked on June 18, 2011.[5]  (*Id.* 428-429.)  Plaintiff complained of bilateral shoulder pain and left deltoid pain; neck pain, left and right side; lumbar spine pain; left knee pain; left second finger pain; and posttraumatic stress disorder.  (*Id.* 429.)  Dr. Steiger's physical examination listed a multitude of clinical findings,  including:  moderate tenderness of the right upper trapezius; diminished cervical range of motion; tenderness upon palpation of the bilateral supraspinatus tendons, bilateral coracoid processes, bilateral biceps, bilateral bicipital grooves, bilateral acromioclavicular joints, and left deltoid; positive impingement test and crank test;

---

[4]    The Commissioner additionally argues that Dr. Ho's opinion that plaintiff was disabled is an opinion on an issue reserved for the Commissioner, and the ALJ need not accept it for that reason as well.  (Joint Stip. at 15.)  However, the ALJ did not rely on this reason, and the Court may not consider it.  *See Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citing *Connett*, 340 F.3d at 874).

[5]    The record establishes that plaintiff was stabbed on June 18, 2012, and he looked for work until the stabbing. (*Id.* 246, 502, 515.)

diminished shoulder range of motion; tenderness and limited motion in the left second finger; hypesthesia of the left second finger; limited left grip strength; an antalgic gait to the right; use of a cane with ambulation; difficulty performing heel and toe walking on the right; moderate tenderness of the bilateral posterior-superior iliac spines; moderate tenderness over the lower thoracic spine; diminished lumbar spine range of motion; positive straight leg raising both supine and sitting; positive Lasegue's test for sciatic root irritation; ability to squat no more than half of full range; crepitus at the medial compartment, lateral compartment, and under the patella of the left knee; tenderness at the medial joint line, lateral joint line, and pes anserinus region of the left knee; and positive McMurray's maneuver medially and laterally in the left knee.  (*Id.* 431-435.)

Dr. Steiger  also reviewed a CT scan of the chest, abdomen, and pelvis performed on June 18, 2012, showing a subcutaneous chest tube placement and no evidence of abdominal or pelvic injury; chest x-rays performed on June 18-21, 2012, showing a left chest tube without pneumothorax and left basilar infiltrate; and thoracic spine and lumbar spine x-rays performed on February 11, 2013, showing minimal degenerative spurs in the thoracic spine and mild degenerative and facet joint disease at L5-S1.  (A.R. 436-438.)  Dr. Steiger's diagnoses included left shoulder capsulitis; internal derangement and tendinitis of both shoulders; cervical and lumbar sprains with radiculitis and probable disc herniations; and left index finger deformity.  (*Id.* 440-441.)  Dr. Steiger opined that plaintiff had "difficulty with Activities of Daily Living," and had the following restrictions:  no repetitive or prolonged neck movement; no repetitive work at or above shoulder level; no repetitive pushing, pulling, reaching or lifting; no repetitive gripping, grasping, pinching, fine manipulation; no typing, keyboarding, data entry, or writing more than 25% of a work day; no heavy lifting, pushing, or pulling; no repeated bending or stooping; no repetitive twisting; and no prolonged sitting, standing or walking.  (*Id.* 441.)  Dr. Steiger further opined that plaintiff was unable to perform full time competitive work.  (*Id.*)

10

1    Second, on June 11, 2014, Dr. Steiger completed an impairment questionnaire.  (A.R.
2    25, 411.)  He indicated that he had examined plaintiff once – on April 15, 2014 – and he sees
3    him "as necessary."  (*Id.*)  Dr. Steiger opined that plaintiff could sit for 1-2 hours and stand
4    for 2-3 hours; must get up from a seated position every 30 minutes for 10-15 minutes; could
5    occasionally lift or carry up to 10 pounds; could occasionally grasp, turn, and twist objects;
6    could occasionally use hands/fingers for fine manipulations; and could occasionally use arms
7    for reaching.  (*Id.* 413-414.)  He opined that plaintiff's symptoms would occasionally
8    interfere with attention and concentration, and that plaintiff would need to take unscheduled
9    breaks to rest every 30 minutes for 10-15 minutes during an 8-hour workday.  (*Id.* 414.)  He
10   opined that plaintiff would be absent from work as a result of his impairments or treatment
11   two to three times a month, and that plaintiff's symptoms and limitations apply back as far as
12   June 18, 2011, the date plaintiff told him he last worked.  (*Id.* 415.)

13

14    Third, on February 19, 2015, Dr. Steiger completed a letter stating that he had
15   examined plaintiff on April 15, 2014, and the limitations expressed in the June 11, 2014
16   questionnaire remained accurate.  (A.R. 471.)  Dr. Steiger specified that plaintiff could sit for
17   1-2 hours, stand and/or walk for 2-3 hours; occasionally lift and/or carry up to 10 pounds;
18   and occasionally grasp, turn and twist objects, use hands/fingers for fine manipulation, and
19   use arms for reaching.  (*Id.*)  He stated that plaintiff occasionally experiences symptoms
20   severe enough to interfere with attention and concentration, and plaintiff would likely be
21   absent from work as a result of his impairments or treatments two to three times a month.
22   (*Id.*)  He opined that plaintiff continued to be "unable to sustain employment," and he did
23   not believe that plaintiff would "be able to do any full-time competitive work in the
24   foreseeable future."  (*Id.*)
25   \\
26   \\
27   \\
28   \\

11

### 2.  The ALJ's Reasons for Discounting Dr. Steiger's Opinion

The ALJ gave "little weight" to Dr. Steiger's opinion for five reasons:  (1) plaintiff underwent the examination by Dr. Steiger through an attorney referral, and Dr. Steiger was presumably paid for the report; (2) the opinion was brief, conclusory, and inadequately supported by clinical findings; (3) the conclusion that plaintiff was unable to work since June of 2011 had no probative value; (4) the opinion was inconsistent with the objective medical evidence as a whole; and (5) the opinion was inconsistent with plaintiff's activities of daily living.  (A.R. 27.)

Based on the record, the ALJ's inference that Dr. Steiger is biased is not legitimate or supported by substantial evidence.  The ALJ noted that plaintiff was examined by Dr. Steiger "not in an attempt to seek treatment for symptoms, but rather through an attorney referral in an effort to generate evidence for the hearing," and that "Dr. Steiger was presumably paid for the report." (A.R. 27.)  Absent evidence of "actual improprieties" in the manner in which a medical report was obtained or prepared, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.  An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner."  *Lester*, 81 F.3d at 832 (holding that the ALJ erred in rejecting an examining psychologist's opinion on the ground that his reports "were clearly obtained by the claimant's attorney for the purpose of litigation," and noting that "the [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits") (citation omitted); *see also Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.").

Here, the Court finds no evidence of actual improprieties in the way Dr. Steiger's opinion was obtained or prepared. Therefore, the ALJ erred in discounting Dr. Steiger's opinion on the inference of bias. *See Nguyen*, 100 F.3d at 1464 (holding that a doctor's "credibility is not subject to attack" on the ground that the claimant was referred by his attorney unless "the opinion itself provides grounds for suspicion as to its legitimacy").

Second, the ALJ discounted Dr. Steiger's opinion because it was brief, conclusory, and inadequately supported by clinical findings. (A.R. 27.) An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (finding that an ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation.") The ALJ's reliance on this ground appears to be at odds with his discussion of Dr. Steiger's April 15, 2014 report.

As the ALJ noted, Dr. Steiger's report listed "over 31 clinical findings" based on his examination, from deformity of the left second index finger to limited range of motion in the lumbar spine; listed the results of diagnostic studies; listed ten diagnoses, including capsulitis, internal derangement, and tendinitis in the shoulders bilaterally; musculoligamentous sprain in the cervical and lumbar spines; probable disc herniation in the cervical and lumbar spines; and deformity of the left index finger; and included an assessment of plaintiff's limitations. (A.R. 25, 431-440.) The Ninth Circuit has repeatedly held that an ALJ may properly reject a physician's opinions where the physician's conclusions do not "mesh" with the patient's objective data or history. *See, e.g.*, *Tommasetti*, 533 F.3d at 1041 (finding that the incongruity between the limitations listed by the physician – which lacked support in the patient's medical records – provided a specific and legitimate reason for rejecting that physician's opinion of the patient's

1    limitations); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly

2    discounted physician's limitations as "not supported by any findings.").   Here, the ALJ

3    makes no attempt to explain why Dr. Steiger's opinion was not supported by his findings.

4    Accordingly, the Court does not find that the ALJ stated specific and legitimate reasons,

5    supported by substantial evidence, to support the ALJ's finding that Dr. Steiger's opinion

6    was brief, conclusory, and inadequately supported by clinical findings.

7

8         Third, the ALJ discounted Dr. Steiger's opinion that plaintiff was unable to work

9    since June of 2011 because his conclusion had "no probative value."  (A.R. 27, 415.)  The

10   ALJ must make the ultimate disability determination and is free to find plaintiff more or less

11   functionally limited than Dr. Steiger.   *See* SSR 96-5p, 1996 WL 374183, at *5

12   (Commissioner makes the ultimate disability determination); *McLeod v. Astrue,* 640 F.3d

13   881, 885 (9th Cir. 2011) (holding that a physician's evaluation of a claimant's ability to

14   work is not entitled to deference because "[t]he law reserves the disability determination to

15   the Commissioner"); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear

16   that it is the responsibility of the ALJ, not the claimant's physician, to determine residual

17   functional capacity.").   Here, the ALJ noted that the opinion that plaintiff was unable to

18   work since June of 2011 was on an issue reserved to the Commissioner, and that June 2011

19   happened to be over a year prior to plaintiff's stabbing incident.[6]  (*Id.* 25, 27.)  The ALJ was

20   entitled to reject Dr. Steiger's conclusory statement that plaintiff was unable to work since

21   June of 2011.   *See* §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that

22   you are 'disabled' or 'unable to work' does not mean that we will determine that you are

23   disabled.").   However, the ALJ is still obligated to state specific and legitimate reasons

24   supported by substantial evidence for discounting the balance of Dr. Steiger's opinion.  *See*

25   *Reddick*, 157 F.3d at 725.

26

27   _____

28   [6]     Plaintiff testified that he could have worked until he was stabbed in 2012.  (A.R. 502.)

14

1   Fourth, the ALJ discounted Dr. Steiger's opinion because it was inconsistent with the
2   objective medical evidence as a whole.  (A.R. 25, 27.)  The consistency of a medical opinion
3   with the record as a whole is a relevant factor in evaluating a medical opinion.  *Orn*, 495
4   F.3d at 631.  Dr. Steiger found plaintiff had tenderness over the bilateral supraspinatus
5   tendons, coracoid processes, biceps, bicipital grooves, and acromioclavicular joints; limited
6   range of motion of the bilateral shoulders; difficulty with shoulder usage on the left;
7   tenderness at the left deltoid; discomfort with resisted flexion/extension and resisted
8   flexion/supination at the left shoulder; positive impingement test at the left shoulder; and
9   positive crank test at the left shoulder.  (A.R. 432, 438-439.)  He diagnosed plaintiff with
10  capsulitis, left shoulder; internal derangement, bilateral shoulders; and tendinitis, bilateral
11  shoulders.  (*Id.* 440.)  He restricted plaintiff to, *inter alia*, no repetitive work at or above
12  shoulder level; no repetitive pushing, pulling, reaching or lifting; sitting for 1-2 hours;
13  standing for 2-3 hours; and lifting 10 pounds.  (*Id.* 413-414, 441.)  He further opined that
14  plaintiff was unable to perform full time competitive work.  (*Id.* 441.)

16  In contrast, orthopedic consultative examiner, Dr. Bernabe, performed physical
17  examinations on September 24, 2012 and June 12, 2013 that were remarkably normal.  (A.R.
18  24, 207-209, 329-334); *see Orn*, 495 F.3d at 632 ("[W]hen an examining physician provides
19  'independent clinical findings that differ from the findings of the treating physician,' such
20  findings are 'substantial evidence.'") (citations omitted).  Dr. Bernabe found that plaintiff's
21  shoulders and fingers exhibited a normal range of motion.  (*Id.* 208, 331-332.)  He found that
22  plaintiff exhibited normal motor strength and greater grip strength than found by Dr. Steiger.
23  (*Id.* 209.)  He found that plaintiff tested negatively in the straight leg raising test bilaterally.
24  (*Id.* 208.)  Dr. Bernabe opined that plaintiff could perform medium work.  (*Id.* 210, 333.)

26  Dr. Steiger's opinion also conflicted with other medical evidence in the record.
27  February 11, 2013 MRIs revealed mild degenerative and facet joint disease in plaintiff's
28  lumbar spine and minimal degenerative spurs in the thoracic spine without acute fracture or

subluxation.  (A.R. 233-234.)  On May 12, 2013, plaintiff went to the emergency department complaining of pain in the left shoulder, was diagnosed with shoulder pain exacerbation, and was prescribed Tylenol 3.  (*Id.* 25, 222-223.)  At a follow-up appointment with his treating physician on May 23, 2013, plaintiff reported that the Tylenol 3 helped his pain "significantly," and an examination revealed no apparent distress and he was ambulatory with a cane.  (*Id.* 363.)  A June 25, 2013 treatment note indicates that plaintiff's pain continued to be controlled with medication, and although plaintiff complained of clicking of his right knee, an examination revealed no swelling or effusion.  (*Id.* 360.)  A July 24, 2013 treatment note indicates that despite plaintiff's complaints of back pain, an examination revealed no apparent distress and he was ambulatory with a cane.  (*Id.* 357.)  On September 18, 2013, plaintiff reported that his left shoulder pain was improved with physical therapy, he requested physical therapy for his back pain, he reported "good result" with Ultram, and an examination revealed no apparent distress.  (A.R. 354.)  A December 2013 occupational therapy reassessment and discharge summary indicates that plaintiff had made improvements in his shoulder range of motion.  (*Id.* 385.)  A March 2014 treatment note indicates that plaintiff continued to get pain relief with medication.  (*Id.* 418.)

Considering the record as a whole, and considering the ALJ's specific references to the contradictions in the record between Dr. Steiger's opinion and the other objective medical evidence, inconsistency with the objective medical evidence is a specific and legitimate reason, supported by substantial evidence in the record, for discounting Dr. Steiger's opinion.  The Court further notes that plaintiff does not challenge the ALJ's finding that Dr. Steiger's opinion was inconsistent with the objective medical evidence.

Fifth, the ALJ discounted Dr. Steiger's opinion because it was inconsistent with plaintiff's activities of daily living.  (A.R. 27.)  According to plaintiff, he can drive, although he usually does not drive; feed the cat; make coffee; get dressed; groom himself; do basic chores like mopping, sweeping, vacuuming, and cleaning the dishes; go to the grocery store

with his grandmother; pay bills and keep track of money; watch TV; and talk to family members on the phone. (*Id.* 202, 508, 513-514.) He testified that he needs to lie down about three times a day for 35 to 40 minutes, depending on the pain. (*Id.* 517.) Such activities are not necessarily inconsistent with Dr. Steiger's opinion that plaintiff was unable to perform full time competitive work. *See Binford v. Colvin*, 113 F. Supp. 3d 1067, 1072 (W.D. WA. 2015) (where claimant's daily activities are not inconsistent with a treating physician's opinion, the plaintiff's daily activities do not provide a legitimate reason to discount the treating physician's opinion). Accordingly, the Court finds that substantial evidence does not support the ALJ's reliance on inconsistency with activities of daily living as a reason for discounting Dr. Steiger's opinion.

In sum, while the ALJ's reliance on an inference of bias or inconsistency with activities of daily living as bases for discounting Dr. Steiger's opinions was not supported by substantial evidence, the Court finds that the ALJ properly rejected Dr. Steiger's conclusory statement that plaintiff was unable to work since June 2011, and properly discounted Dr. Steiger's opinion based on inconsistency with the objective medical evidence as a whole.

## II.   The ALJ Did Not Err In Assessing Plaintiff's Credibility.

Plaintiff's second contention is that the ALJ improperly discounted his subjective symptom testimony. (Joint Stip. at 18-20.) An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not fully credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony

1    regarding the severity of the claimant's symptoms."[7]  *Id.*  "General findings are insufficient."

2    *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick*, 157 F.3d at 722).

3

4        Here, the ALJ found that he could not assess greater functional limitations or total

5    disability based on plaintiff's subjective complaints because they were not entirely credible.

6    (A.R. 24.)   The ALJ cited the following reasons for discounting plaintiff's excess pain

7    testimony:   (1) the objective medical evidence did not support the alleged severity of

8    plaintiff's symptoms and limitations; and (2) plaintiff's conservative treatment suggested

9    that his symptoms and limitations were not as severe as alleged.  (*Id.* 24-28.)

10

11        The ALJ did not err in discounting plaintiff's subjective symptom testimony due to

12   the lack of objective medical evidence supporting the alleged severity of his symptoms.  The

13   ALJ thoroughly discussed the objective medical evidence in the record.  (A.R. 24-28.)  The

14   ALJ noted that a physical examination on September 24, 2012 by an orthopedic consultative

15   examiner was normal, and plaintiff was diagnosed with cervical, thoracic, and lumbar

16   musculoligamentous and myofascial strain.  (*Id.* 24, 207-209.)  Imaging studies in February

17   2013 revealed mild degenerative and facet joint disease at L5-S1 and minimal degenerative

18   spurs in the thoracic spine, both without acute fracture or subluxation.  (*Id.* 233-234.)  In

19   May 2013, plaintiff reported relief with medication, and an examination revealed no

20   apparent distress and that he was ambulatory with a cane.  (*Id.* 25, 363.)

21

22        In June 2013, plaintiff attended a second orthopedic consultative examination, and

23   plaintiff was able to walk unassisted without a cane, was capable of toe and heel walk, and

24   could perform a 50% squat.  (A.R. 25, 331-333.)  Neck, shoulder and finger range of motion

25   was within normal limits.  (*Id.* 25, 331-332.)  Back examination revealed no scoliosis,

26   abnormal curvatures, masses or scar; tenderness at the lumbosacral region; no paravertebral

27

28   ───────────────
     [7]      The Commissioner argues that the "clear and convincing reasons" standard is not applicable, but that the ALJ's
     reasons suffice under any standard.   (Joint Stip. at 21.)

muscle spasm; and diminished range of motion of the lumbar spine. (*Id.* 331.)  Plaintiff was diagnosed with lumbar strain and patellofemoral pain syndrome in the bilateral knees, and was assessed as being able to perform medium work.  (*Id.* 25, 333.)  In that same month, treatment notes indicate that plaintiff's pain was well controlled, and an examination revealed that he was in no apparent distress, he was ambulatory with a cane, and there was no swelling or effusion of the right knee. (*Id.* 360.)  In September 2013, plaintiff continued to report decreased pain with physical therapy and medication, and an examination revealed no apparent distress.  (*Id.* 25, 354.)  In March 2014, plaintiff again reported relief with medication.  (*Id.* 25, 418.)  An independent orthopedic consultative examination by Dr. Steiger in April 2014 indicated over 31 clinical findings, as discussed above.  (*Id.* 25, 431-440.)  The ALJ could reasonably find that Dr. Steiger's findings did not support the alleged severity of plaintiff's symptoms.

The ALJ also discussed the objective evidence regarding plaintiff's mental impairments.  (A.R. 25-26.)  In September 2012, plaintiff reported to the psychological consultative examiner that he could drive, shower, bathe, groom, dress, pay bills, keep track of money, vacuum, wash dishes, mop, sweep, and visit with his family. (*Id.* 25-26, 202.)  He reported that he had never been psychiatrically hospitalized, had never been treated by an outpatient mental health provider, and had never been prescribed psychotropic medication. (*Id.* 26, 202.)  Plaintiff presented with a broad range of affect and a euthymic mood, his attention to instructions was fair, and his task persistence was generally fair.  (*Id.* 26, 203.)  He was diagnosed with Anxiety Disorder NOS, Cannabis Abuse, Dysthymic Disorder, and Depressive Disorder NOS.  (*Id.* 23, 204.)  The psychologist opined that plaintiff would have only mild functional difficulties associated with his mental impairment.  (*Id.* 26, 204-205.)  The ALJ also noted that plaintiff received mental health medications from his primary care provider, and he was first prescribed medication for his self-reported PTSD in May 2013. (*Id.* 26, 363.)  Plaintiff reported reduced feelings of anxiety and stress on medication in September 2013.  (*Id.* 26, 354.)  He was treated in the emergency department for anxiety in

19

January 2014, but he had been off of his medication for five days.  (*Id.* 26, 375-376, 418.)

He declined behavioral health services in February 2014.  (*Id.* 26, 421.)

Although the conflict between plaintiff's testimony and the objective medical evidence cannot form the sole basis for the ALJ's adverse credibility determination, the ALJ did not err by finding that the conflict is one reason for discounting plaintiff's subjective symptom testimony.  *See Burch*, 400 F.3d at 681.  Moreover, plaintiff did not contest the ALJ's reliance on a lack of supporting objective medical evidence as a reason for discounting his excess pain testimony.  (Joint Stip. at 18-20.)

The ALJ also provided a second clear and convincing reason for discounting plaintiff's subjective symptom testimony:  plaintiff's conservative treatment.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").  Specifically, with regards to physical impairments, the ALJ noted that "the lack of more aggressive treatment, surgical intervention, or even a referral to a specialist suggests that [plaintiff]'s symptoms and limitations were not as severe as he alleged."  (A.R. 26.)  Plaintiff argues that his treatment was not conservative because he received "regular" emergency department treatment for his back, shoulder, and knee pain, and received monthly to bimonthly medication management from his primary care physician.  (Joint Stip. at 20.)

The record indicates that plaintiff went to the emergency department in early 2013 approximately four times complaining of back pain and shoulder pain.  (A.R. 25, 222, 229, 231, 235.)  On February 5, 2013, plaintiff went to the emergency department complaining of back pain that began eight months ago, and a popping pain with arm movement that began two weeks ago.  (*Id.* 235.)  An examination revealed no midline tenderness, intact sensation, no incontinence, no swelling, no TTP, and no ecchymosis.  (*Id.* 236.)  He was given Tramadol and advised to follow up with his primary care physician.  (*Id.*)  Plaintiff went to

20

the emergency department on February 11, 2013 complaining of intermittent mid-lower back pain.  (*Id.* 231.)  An examination revealed mild diffuse low back pain without spasm.  (*Id.* 232.)  Imaging showed mild degenerative and facet joint disease at L5-S1 without acute fracture or subluxation.  (*Id.* 233.)  Plaintiff reported that Tramadol was not helping, and he was given Robaxin (a muscle relaxant) and Motrin 600 (an anti-inflammatory drug), and was advised to follow-up in clinic.  (*Id.* 232.)  On April 17, 2013, plaintiff went to the emergency department complaining of left shoulder pain.  (*Id.* 229.)  An examination revealed an old left shoulder scar and diminished range of motion.  (*Id.* 230.)  On May 12, 2013, plaintiff went to the emergency department complaining of left shoulder pain and insomnia.  (*Id.* 222-223.)  An examination was within normal limits, but it was noted that plaintiff uses a cane.  (*Id.* 223.)  Plaintiff was treated with Tylenol 3 (a narcotic pain reliever) and Restoril (for insomnia).  (*Id.*)  At a follow up appointment on May 23, 2013, plaintiff reported that the Tylenol 3 helped his pain "significantly," and he wanted to continue using it.  (*Id.* 363); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for" Social Security benefits).  Thereafter, plaintiff reported that physical therapy and medication helped his pain, and he stopped visiting the emergency department for physical complaints.  (*Id.* 348, 354, 357, 360, 363, 385, 387-390, 418, 509.)

Plaintiff's medication management also included Tramadol, Ultram, and Norco, which provided some pain relief.  (A.R. 25, 354, 363, 370, 373, 418, 523.)  Plaintiff argues that treatment with narcotics is not conservative.  (Joint Stip. at 20.) However, narcotic medications were only a part of plaintiff's overall treatment regimen, which included physical therapy, exercise, and anti-inflammatory medication.  (A.R. 25, 370, 373, 387.)  *See Tommasetti*, 533 F.3d at 1040 (holding that the ALJ permissibly discounted credibility when claimant "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication"); *see also Huizar v. Comm'r*, 428 F. App'x. 678, 680

21

(9th Cir. 2011) (finding that plaintiff responded favorably to conservative treatment, which included the use of narcotic pain medication).

Regarding plaintiff's mental impairments, the ALJ noted that despite reporting a history of PTSD and depression since the alleged onset date, plaintiff denied ever seeing a psychiatrist, being hospitalized for psychiatric treatment, or receiving any psychiatric treatment including psychotherapy. (A.R. 26, 421.) Furthermore, plaintiff was treated with Celexa and Temazepam, prescribed by his primary care provider, which worked well. (*Id.* 26, 354, 363, 418.) For example, on January 30, 2014, plaintiff went to the emergency room for anxiety, but he reported being off of his psychiatric medication for the previous five days. (*Id.* 26, 375-376.) His anxiety was improved with Xanax, and he was discharged about four hours after arrival. (*Id.* 26, 375-376, 418.) In February 2014, plaintiff was offered counseling and evaluation through behavioral health services, but he declined. (*Id.* 26, 421.) In March 2014, he reported that the medications were controlling his anxiety. (*Id.* 418.)

Plaintiff argues that his mental health treatment by his primary care physician, Dr. Ho, "should not be discounted merely because it was not prescribed by a mental health specialist." (Joint Stip. at 19.) However, the ALJ did not rely solely on this reason. As discussed above, the ALJ also noted that plaintiff had never been hospitalized for psychiatric treatment, did not receive psychotherapy, and his anxiety and feelings of stress were reduced with medication. (A.R. 26.)

The record as a whole supports the ALJ's finding that plaintiff's credibility was undermined by the lack of supporting objective evidence and plaintiff's conservative treatment. Accordingly, the ALJ gave specific, clear and convincing reasons for finding plaintiff's allegations of the severity of his symptoms and limitations not entirely credible, and those reasons are supported by substantial evidence.

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: April 5, 2016

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE